**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

ERIC L. HARRINGTON,

    Petitioner,                              Civil No. 2:07-CV-13493
                                                       HONORABLE NANCY G. EDMUNDS
v.                                           UNITED STATES DISTRICT JUDGE

SUSAN DAVIS,

    Respondent,
                                       /

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Eric L. Harrington, ("petitioner"), presently confined at the Pine River Correctional Facility in St. Louis, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254.[1] In his *pro se* application, petitioner challenges his convictions for first-degree criminal sexual conduct, M.C.L.A. 750.520b(1)(f); and being a third felony habitual offender, M.C.L.A. 769.11. For the reasons stated below, petitioner's application for writ of habeas corpus is **DENIED.**

### I. Background

Petitioner was convicted of the above charges following a jury trial in the Oakland County Circuit Court. Petitioner has provided a detailed statement of facts in his

---

[1] When petitioner originally filed his petition for writ of habeas corpus, he was incarcerated at the Huron Valley Men's Complex, but has since been transferred to the Pine River Correctional Facility. The only proper respondent in a habeas case is the habeas petitioner's custodian, which in the case of an incarcerated habeas petitioner would be the warden of the facility where the petitioner is incarcerated. *See Edwards Johns,* 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006) *See also* Rule 2(a), 28 foll. U.S.C. § 2254. Normally, the Court would order that the caption of the case be amended to reflect that the proper respondent in this case is Tom Birkett, the warden of Pine River Correctional Facility, the current location of petitioner. However, because the Court is denying the petition, it will not do so in this case. *See Logan v. Booker,* No. 2007 WL 2225887, * 1, n. 1 (E.D. Mich. August 1, 2007).

1

Application for Leave to Appeal to the Michigan Supreme Court, which he has attached to his petition for writ of habeas corpus. [2] Respondent has likewise provided a detailed factual summary of the case, which does not essentially conflict with the petitioner's statement of facts. [3] The Court will therefore accept the factual allegations contained within the habeas petition insofar as they are consistent with the record, because the respondent has not disputed them. *See Dickens v. Jones,* 203 F. Supp. 2d 354, 360 (E.D. Mich. 2002). Because the facts of this case have been repeated numerous times, they need not be repeated here in their entirety. Therefore, only a brief overview of the facts is required. *See Nevers v. Killinger,* 990 F. Supp. 844, 847 (E.D. Mich. 1997).

Petitioner was charged with sexually assaulting a woman who lived with petitioner and his girlfriend Kim Jones at their apartment in Pontiac, Michigan. The victim did not immediately report the incident but remained at petitioner's apartment for several hours. The victim finally ran upstairs to the apartment of Nicole Morton and asked her to call the police. The victim's 911 call to the police was admitted into evidence.

Pontiac Police Sergeant James Farris testified that at 12:30 a.m. on October 1, 2003, he was dispatched to Morton's apartment in Pontiac. Farris interviewed the victim, whom he described as trembling and scared. At times during the interview, the victim broke down and cried. The victim had on a T-shirt, but was not fully clothed. The victim informed the police that petitioner raped her.

---

[2] *See* Application for Leave to Appeal to the Michigan Supreme Court, pp. 1-11 [Part of this Court's Dkt Entry # 1].

[3] *See* Respondent's Answer to Petition for Writ of Habeas Corpus, pp. 5-17 [This Court's Dkt Entry # 6].

Pontiac Police Officer Ian Kershaw testified that he was a canine handler, who attempted to track petitioner from the screen on the back window of the living room of his apartment, which had been pushed out. Officer Kershaw's dog went north through some woods and west to another side street, before the scent disappeared. When Kershaw saw the victim, she appeared scared and, at times, she cried.

A forensic nurse subequently examined the victim and found some tears and some abrasions in the victim's vaginal area. The nurse testified that these injuries were fresh and made within the day. The nurse testified that such injuries were not consistent with consensual sex because, in cases of consensual intercourse, a woman's vaginal area normally becomes lubricated and ready for penetration. The nurse testified that the victim appeared quiet, very nervous, and angry during the examination.

Petitioner was interviewed by the police subsequent to his arrest. Petitioner admitted having sex with the victim, but claimed that it was consensual. Petitioner admitted leaving the apartment after learning that the victim had called the police. Petitioner's trial testimony mirrored his statement to the police.

Petitioner called several witnesses, including his girlfriend, Kim Jones, to testify for the defense.

Petitioner was convicted of the two first-degree criminal sexual conduct charges. After the jury was discharged, the matter was recalled without defense counsel or petitioner being present. Four jurors remained and came into the courtroom. Juror Number 10 informed the trial court judge that he had heard that one of the other jurors, Juror Number 12, had been threatened as he was going to lunch on Friday. Juror Number 10 told Juror Number 12 that he should say something to somebody if he had been threatened. Juror

Number 12 told Juror Number 10 that as the jury was walking to lunch, Kim Jones and another woman with her said -"Not guilty", and then they heard, "If not, you'll be killed." Juror Number 10 himself did not hear anything "but that's what they told me they heard." (Tr. April 26, 2004, pp. 10-11). Juror Number 1 thought that Juror Number 12 had told them that it had happened after the jury was leaving "yesterday [sic Friday]". (*Id.* at p. 11). Juror Number 10 then said that he was not sure if it was at lunch or when they left. (*Id.* at p. 11). Juror Number 8 told the judge that he was part of a group that went to lunch with Juror Number 12. As they passed a corner they observed Kim Jones and a girl with her. Juror Number 8 stated: "I didn't hear anything until today, as we were all talking; after the verdict was decided upon, I heard some people talking about Kim [Jones] had threatened someone. Or had threatened - I thought they were talking about she had threatened Eric [the petitioner] as he was going to the witness stand * * * that she was going to kill him if he was guilty. But that's not what it was. It was that they had said that when we were rounding the corner to . . . Chuck, or number twelve or whatever, * * * "[n]ot guilty." (*Id.* At pp. 11-12). Juror Number 4 stated that he had heard that too, but thought that it was when they were leaving. Juror Number 8 stated it was on the way to lunch. Juror Number 4 agreed that he had not heard anything personally from Kim Jones. Juror Number 8 stated that she heard the words "not guilty" and "kill" but not the whole threat. Juror Number 4 stated that Juror Number 11 heard the words "not guilty" and Juror Number 12 heard the word "kill". Juror Number 4 stated that they looked at each other and said "did you just hear what I heard? We heard something." Juror Number 10 stated that they just thought it should be brought to the court's attention. (*Id.* at pp. 12-14). The judge stated : "Well, I'm glad. Because something will be done about it." The judge advised the jurors not to worry

4

and that he would take care of it. (*Id.* at pp. 14-16). Significantly, neither Jurors Number 11 or 12 were present during this post-verdict colloquy.

Petitioner's appellate counsel filed a motion to remand, in which he claimed that neither he nor his lawyer were present when the jurors "made a post-verdict record." Appellate counsel also sought "remand to make a motion for new trial based on the likelihood that the jury's verdict was affected by the witness' threat." The motion to remand was denied. *People v. Harrington,* No. 256063 (Mich.Ct.App. February 23, 2005).

Petitioner's conviction was affirmed on appeal. *People v. Harrington,* No. 256063 (Mich.Ct.App. February 9, 2006); *lv. den.* 476 Mich. 864, 720 N.W.2d 292 (2006).

Petitioner seeks a writ of habeas corpus on the following grounds:

I. Where four jurors told the judge that another juror was threatened by a witness in the case, petitioner's constitutional rights were violated when the judge failed to hold a hearing, with the defense present, to investigate the report.

II. The trial court erred in ruling that the prosecution exercised due diligence to locate and produce endorsed witness Nicole Morton, and thus refusing to give the defense the requested missing witness instruction.

## II. Standard of Review

28 U.S.C. § 2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

5

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11.

### III.  Discussion

**A.  Claim # 1.  The extraneous juror influence claim.**

Petitioner first alleges that the trial court judge denied him his right to due process and to an impartial jury when he failed to hold a hearing to determine whether an extraneous influence could have affected the jury's verdict, after being informed by four jurors that another juror had been threatened by petitioner's girlfriend.

In rejecting petitioner's claim, the Michigan Court of Appeals stated:

Here, the jury began its deliberations on Friday, April 23, 2004, and it returned a guilty verdict on the first-degree CSC charges on Monday, April 26, 2004. After the trial court excused the jury, Jurors One, Ten, Four, and Eight remained in the courtroom to talk to the judge. The jurors told the judge on the record that Juror Twelve, who was not present during the post-verdict discussion, heard defendant's girlfriend, Kimberly Jones, allegedly threaten him on Friday, April 23, 2004. According to the jurors, as Juror Twelve and others passed Jones during a lunch break that day, Juror Twelve heard Jones say that if he failed to reach a not guilty verdict, he would be killed. Of the jurors who reported the incident to the judge, only Juror Eight was present during the alleged threat and he merely heard Jones say the words "not guilty" and "kill." The other jurors heard about the

6

incident from Juror Twelve or others after the jury reached a verdict on Monday.

Defendant has not shown that the jury was exposed to extraneous influences that created a real and substantial possibility of affecting the jury's verdict. First, defendant did not present any admissible evidence, such as affidavits, to support his argument that Juror Twelve was exposed to Jones' threat. Rather, he relies on statements of four other jurors, and those statements are merely hearsay. The record shows that none of the four jurors personally heard Jones' threat to Juror Twelve in its entirety nor were they certain of what they heard. Absent evidence to support his argument, it is unclear what portion of Jones' threat Juror Twelve actually heard. Further, if Juror Twelve heard the entire threat, it is unclear what negative effect it could have had on defendant's case. Defendant's argument that Jones' threat was or may have been considered during deliberations or possibly affected the verdict is based on unsupported speculation. In fact, Juror Eight reported that Juror Twelve discussed Jones' threat with other jurors *"after the verdict was decided upon."* (Emphasis added.)
*Harrington,* Slip. Op.at * 2 (internal citations omitted). [4]

In *Remmer v. United States*, 347 U.S. 227, 230 (1954), the Supreme Court held that a trial court confronted with an allegation of external tampering or contact with a juror during a trial about a matter pending before the jury "should determine the circumstances, the impact [of the contact] upon the juror, and whether or not it was prejudicial, in a hearing with all interested parties permitted to participate". However, a *Remmer* hearing is not required unless the defendant can show that the unauthorized juror contact "created actual juror bias." *United States v. Frost*, 125 F. 3d 346, 377 (6th Cir. 1997).

A habeas petitioner must prove the existence of juror prejudice resulting from an extraneous or extrinsic influence by a preponderance of the evidence. *See De La Rosa v. State of Tex.,* 743 F. 2d 299, 306 (5th Cir. 1984). An evidentiary hearing is not required

---

[4] The Michigan Court of Appeals also rejected petitioner's claim on the ground that he failed to preserve the issue by objecting or moving for a mistrial in the trial court. Respondent did not argue in her answer that petitioner's claim was procedurally defaulted on this basis. Respondent's failure to raise the procedural default defense can be considered an implicit waiver of that issue. *See Benoit v. Bock,* 237 F. Supp. 2d 804, 807 (E.D. Mich. 2003).

every time an allegation of jury misconduct or bias is made; rather, in determining whether a hearing is necessary, a trial court must consider the content of the allegations, the seriousness of the alleged misconduct or bias, and the credibility of the source. *See Tracey v. Palmateer,* 341 F. 3d 1037, 1044 (9th Cir. 2003)(internal citation omitted). Courts should be "hesitant to haul jurors in after they have reached a verdict in order to probe for potential instances of bias, misconduct or extraneous influences", thus, "a trial court is required to hold a post-trial jury hearing only when reasonable grounds for investigation exist." *See United States v. Sun Myung Moon,* 718 F. 2d 1210, 1234 (2nd Cir. 1983). Reasonable grounds for such an investigation exist "when there is clear, strong, substantial and incontrovertible evidence" that a "specific, nonspeculative impropriety has occurred which could have prejudiced the trial of a defendant." *Id.* A hearing is not held to afford a convicted defendant the opportunity to "conduct a fishing expedition." *Id.* (internal citation omitted).

Moreover, "[s]ince the trial judge is in the best position to determine the nature and extent of alleged jury misconduct, his decision on the scope of proceedings necessary to discover misconduct is reviewed only for an abuse of discretion." *United States v. Rigsby,* 45 F. 3d 120, 125 (6th Cir. 1995)(*quoting United States v. Shackelford*, 777 F. 2d 1141, 1145 (6th Cir. 1985)). Finally, in a habeas corpus case, a state court's findings on whether, and how, an extraneous matter affected jury deliberations "deserve[ ] a 'high measure of deference.'" *Mahoney v. Vondergritt,* 938 F. 2d 1490, 1492(1st Cir. 1991)(*quoting Rushen v. Spain*, 464 U.S. 114, 120 (1983)).

As an initial matter, petitioner is not entitled to an evidentiary hearing in federal court on his claim, because he failed to take the appropriate steps to develop the factual

basis of his claim in the state courts. Under the opening clause of § 2254 (e)(2), a failure to develop the factual basis of a claim by a habeas petitioner is not established unless there is a lack of diligence, or some greater fault, attributable to the prisoner or prisoner's counsel. *Williams v. Taylor*, 529 U.S. 420, 432 (2000). Diligence for purposes of the opening clause of this subsection of the Antiterrorism and Effective Death Penalty Act (AEDPA) depends upon whether the prisoner made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court; it does not depend upon whether those efforts would have been successful. *Id.* at 435. Diligence will require that the petitioner, at a minimum, seek an evidentiary hearing in state court in the manner prescribed by state law. *Id.*

In the present case, petitioner failed to present to the state trial or appellate courts any affidavit from Juror 12 to establish that this juror had actually been threatened, nor had he attached any affidavits from any other jurors which established that they had been threatened or that they had discussed this alleged threat during the deliberations. The prosecutor's office relied on the absence of any affidavits from the jurors in opposing petitioner's motion to remand before the Michigan Court of Appeals. The Michigan Court of Appeals ultimately rejected petitioner's claim, in part, because it was not supported by any affidavits from Juror 12. Petitioner is not entitled to an evidentiary hearing on his claim that the jury improperly considered extraneous information or otherwise committed misconduct, because petitioner failed to develop the factual basis for that claim in state court. *See Pierce v. Thaler,* 355 Fed. Appx. 784, 793-94 (5th Cir. 2009), *aff'd* --- F.3d ----, No. 2010 WL 1532738 (5th Cir. April 19, 2010). By failing to provide juror affidavits to the Michigan Court of Appeals, petitioner failed to take the proper steps to support a request

9

for an evidentiary hearing on his juror tampering claim. *Id.*

Petitioner's claim fails because he has presented no evidence to this Court or to the state courts that any of the jurors discussed the alleged threat to Juror 12 during their deliberations. *See Garcia v. Andrews,* 488 F. 3d 370, 376 (6th Cir. 2007). More importantly, as the Michigan Court of Appeals recognized, had Juror 12 or any of the other jurors felt any concern over their safety from the threat, they would have voted to acquit petitioner. The fact that the jurors voted to convict petitioner indicates the lack of a due process violation. *Id.* at 377; *See also Atwood v. Mapes,* 325 F. Supp. 2d 950, 971 (N.D. Iowa 2004)(trial judge's communication to jury about anonymous telephone threat made against trial participants on the day of closing arguments did not result in prejudice to petitioner or compromise the impartiality of the jury; despite knowing of the threat, jury still deliberated for a full two days, a fact which, in the absence of any evidence of actual prejudice, foreclosed the inquiry into whether the juror's impartiality was compromised).

Finally, claims concerning the effect of extraneous influences upon the jury during deliberations are subject to a harmless error analysis. *See Mason v. Mitchell*, 320 F.3d 604, 638 (6th Cir. 2003); *See also Nevers v. Killinger,* 169 F. 3d 352, 370 (6th Cir. 1999). For purposes of federal habeas review, a constitutional error that implicates trial procedures is deemed harmless unless it had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993). In the present case, the alleged threat by petitioner's girlfriend did not have a substantial and injurious effect or influence upon the jury's verdict, in light of the evidence against petitioner in this case. Two police officers and a nurse who spoke with the victim

after the assault testified that she appeared nervous, scared, upset, or angry when interviewed after the assault. The nurse examined the victim and found some tears and some abrasions in the victim's vaginal area, which were fresh and made within the day. The nurse testified that such injuries were not consistent with consensual sex. Finally, petitioner fled the scene after the crime. Under Michigan law, flight is relevant to prove a defendant's consciousness of guilt. *Johnson v. Burke*, 903 F. 2d 1056, 1062 (6th Cir. 1990)(internal citations omitted). In light of the evidence against petitioner in this case, petitioner is unable to show that Kim Jones' alleged threat to the juror had a substantial and injurious effect or influence upon the jury.

As a related claim, petitioner contends that he was denied his Sixth Amendment right to counsel because counsel was not present when the trial judge questioned the four jurors. A post-verdict inquiry by a judge into alleged juror misconduct is not a critical stage of the proceedings upon which a defendant has a right to the presence of counsel. *See Mahoney v. Vondergritt,* 938 F. 2d at 1493; *Com. v. Mahoney*, 406 Mass. 843, 856; 550 N.E. 2d 1380 (Mass. 1990); *Cf. United States v. Beeler,* 648 F. 2d 1103 (6th Cir. 1981)(where inspection of sealed exhibit showed that no "extraneous prejudicial information" had been considered by jury and it was not shown that any outside influence was improperly brought to bear upon any juror, court did not err in denying defense motion to inspect posttrial letter written by juror to judge); *Cf. Polizzi v. U.S.*, 550 F. 2d 1133, 1137-38 (9th Cir. 1976)(*in camera* questioning of jurors by trial judge after verdict but before jury was excused, concerning question of adverse publicity, did not improperly infringe upon defendants' rights to a public trial and to due process). Petitioner is not

entitled to habeas relief on his first claim.

### B. Claim # 2. The res gestae witness/missing witness instruction claim.

Petitioner next claims that the trial court erred in ruling that the prosecution exercised due diligence in attempting to locate and produce endorsed witness Nicole Morton and in failing to give the defense the missing witness instruction, CJI 2d 5.12, which instructs the jurors that the missing witness' testimony would have been unfavorable to the prosecution's case.

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F. 3d 542, 552 (6th Cir. 2000); *See also Stephenson v. Renico,* 280 F. Supp. 2d 661, 666 (E.D. Mich. 2003).

Federal law does not require the production of *res gestae* witnesses. *Johnson v. Hofbauer,* 159 F. Supp. 2d 582, 601 (E.D. Mich. 2001). "[U]nder federal law, there is no obligation on the part of the prosecutor to call any particular witness unless the government has reason to believe that the testimony would exculpate the petitioner." *Atkins v. Foltz*, 856 F. 2d 192, 1988 WL 87710, * 2 ( 6th Cir. August 24, 1988)(citing to *United States v. Bryant*, 461 F. 2d 912, 916 (6th Cir. 1972)).

Petitioner has failed to show that Morton's testimony would have exculpated him

of the sexual assaults. Although petitioner argues that Morton could have testified about the victim's demeanor after the sexual assault, in order to refute the claim that she had been sexually assaulted, two police officers and a nurse who spoke with the victim after the assault testified that she appeared nervous, scared, upset, or angry when interviewed after the assault. Morever, as mentioned in discussing petitioner's first claim, *supra,* the forensic nurse who examined the victim found some fresh tears and some abrasions in the victim's vaginal area. This nurse testified that such injuries would not be consistent with consensual sex. Finally, petitioner fled the scene after the crime. Petitioner is unable to show that Morton would have exclupated him of this crime.

The Court will also reject petitioner's related instructional error claim. A habeas petitioner is entitled to relief only if the defective jury instruction "so infected the entire trial that the resulting conviction violates due process." *Cupp v. Naughten*, 414 U.S. 141, 147 (1973). A federal court may not grant habeas relief on the ground that a jury instruction was incorrect under state law, *Estelle*, 502 U.S. at 71-72, and "[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Henderson v. Kibbe*, 431 U.S. 145, 155 (1977).

A criminal defendant does not have a clearly established federal right to a missing witness instruction. Petitioner therefore cannot obtain federal habeas relief based on the state court's failure to give an instruction to jury regarding the prosecution's failure to produce non-police witnesses. *See Stadler v. Curtin,* --- F.Supp.2d ----, No. 2010 WL 331716, * 12 (E.D. Mich. January 22, 2010). Petitioner is not entitled to habeas relief on his second claim.

## IV. Conclusion

The Court will deny the petition for writ of habeas corpus. The Court will also deny a certificate of appealability to petitioner. In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right with respect to any of the claims. *Dell v. Straub,* 194 F. Supp. 2d 629, 659 (E.D. Mich. 2002). The Court will also deny petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. <u>ORDER</u>

Based upon the foregoing, IT IS ORDERED that the petition for a writ of habeas corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a certificate of appealability is **DENIED.**

IT IS FURTHER ORDERED that Petitioner will be **DENIED** leave to appeal *in forma pauperis.*


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 10, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 10, 2010, by electronic and/or ordinary mail.

s/Carol A. Hemeyer
Case Manager